### EIGHTH WARD BANK OF BROOKLYN v. McLOUGHLIN.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

BILLS AND NOTES—ORDER—LIABILITY OF DRAWEE—PROMISE TO ACCEPT.

Where an owner of land executed a bond and mortgage to secure such advances as defendant should make for the erection of buildings up to a certain amount, and drew orders on defendant payable to plaintiff, the proceeds of which were used in the erection of the buildings, and defendant's agent saw the orders, and said they would be all right and would be accepted, plaintiff is entitled to recover their amount from defendant, though defendant advanced other sums up to the amount secured while the orders were outstanding, and though the original contract did not impose any obligation on the defendant to make the advances.

Appeal from Trial Term, Kings County.

Action by the Eighth Ward Bank of Brooklyn against John McLoughlin. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, and RICH, JJ.

Charles A. Murphey, for appellant.
Edward M. Grout, for respondent.

WOODWARD, J. The Eighth Ward Bank of Brooklyn brings this action to recover the sum of $10,500 and interest on seven written orders made and signed by one Edward Burke on one Vennette F.

Pelletreau, directing the latter to pay the plaintiff the sums of money mentioned in said orders, and the question submitted to the jury was whether the said Pelletreau was the agent of the defendant in the transaction to such an extent as to bind the latter to the payment of these orders; it being conceded that all of the money which the defendant had agreed to advance had been paid on and used in the construction of certain buildings on Pierrepont street, in the borough of Brooklyn. It appears from the evidence that on the 8th day of February, 1899, Edward Burke, the owner of the legal title to the premises on Pierrepont street, made an application through his brother, James Burke, the real owner of the premises, and the party directly interested, to Vennette F. Pelletreau, a broker, for a loan upon these premises for $99,000, signing a written application therefor, agreeing to pay a commission of $4,000. This application contained the words, "Loans to be made by John McLoughlin," and was indorsed across the face, "Accepted, and agree to produce said loan as stipulated. Vennette F. Pelletreau." This paper was not signed by John McLoughlin, and another paper, without signature, mentioning the amount desired on each house, was introduced and received in evidence, and these, James Burke testifies, were "the only papers that I worked under with Mr. McLoughlin in building the buildings." On the 18th day of May, 1899, Edward Burke, who was concededly a dummy to hold the legal title to the premises in behalf of his brother, James, executed to the defendant, John McLoughlin, his bond in the sum of $96,500, payable on demand, which contained a provision that:

"It is expressly agreed that the owner of this bond shall be under no obligation to make any advances whatever on this bond, and that said owner can at any time demand, and thereupon collect, whatever advances have been up to that time made, with interest."

—It being the evident purpose of the parties to secure merely the advances which should be made, not to contract for advances which the defendant was under obligations to make in the future. This bond was secured by a mortgage upon the premises mentioned, and contained the same provision as that quoted above in the bond. Attached to the bond, and forming a part thereof, were various receipts, signed by Edward Burke in person or by James Burke, attorney, dated between May 18, 1899, and March 12, 1900, aggregating $84,900. These receipts were all on the same form, and contained the same provision in reference to the liability of the owner of the bond to make advances. After these advances had been made to Edward Burke as dummy for his brother, James, a transfer of the premises was made to Mary A. Sproule, a cousin of James Burke's wife, who seems to have occupied also the position of a dummy to hold the legal title, and soon after this transfer Edward Burke died. On the 28th of March, 1900, Mary A. Sproule, the then legal owner of the premises, signed a written application, similar to the one which had been originally signed by Edward Burke, to Pelletreau for a loan of $11,600 on the same premises, which application contained the words, "Loans to be made by John McLoughlin," and the additional words, "Incumbrances, adverse claims, and defects 84,000 odd ahead of this loan," and it is in evidence that Mary A. Sproule paid a commission of $580 for this loan. A bond and

mortgage similar to those made by Burke in the first instance were made and delivered, and it is apparent that the transaction was merely a continuation of the original provision for a loan of $96,500, and the only question presented on this appeal is whether Pelletreau was so far the agent of the defendant that the filing of orders upon the payments which were made under this loan arrangement imposed an obligation upon the defendant to pay such orders, where the fund has been otherwise disposed of by payments made in the course of construction. It is undoubtedly true that the defendant was not under any obligations to make advances under the provisions of the bond and mortgage. He could at any time have refused to make advances, and the plaintiff would have had no claim upon him under these several orders, even assuming Pelletreau to have been fully authorized to act for the defendant, for there was no contract that the defendant would furnish any funds. The contract was for the payment of the loans which might be made, not for the defendant to make further advances. But the defendant did make advances. He furnished funds up to the full amount of the original bond and mortgage, and if Pelletreau was in fact his agent, knowing all of the facts in reference to the loan, knowing that these orders were outstanding (for they were filed with Pelletreau, who had given assurances to Burke that he would accept the orders and that they were all right), it seems clear that there was an obligation on the part of the defendant to pay these orders, either out of the fund which he had been secured to advance or out of his own pocket. The transaction appears to have been somewhat·loosely conducted, but, if Pelletreau was the agent of the defendant, the facts developed on the trial, are sufficient to show that the defendant knew that these orders had been issued, that they had been used to secure ready money to carry on the work of construction until the various installments provided for by the loan mortgage could be realized, and there was an obligation to see to it that the advances were applied to the payment of these orders. With a knowledge of the facts the defendant is fairly estopped from questioning his liability at this time, for he knew, if his agent knew, that the plaintiff was advancing money to be put into these buildings upon the strength of these orders which Pelletreau had promised to accept, and which he had declared to be all right.

Upon the question of whether Pelletreau was the agent of the defendant, the evidence was conflicting and not wholly satisfactory, and yet as we review the record we cannot say that there is not evidence from which the jury might not properly conclude that the defendant had employed Pelletreau in a wider agency than that of a mere broker; that Pelletreau was in fact the agent of the defendant, authorized to disburse the funds as they were advanced. This was the only question submitted to the jury, and, as we are satisfied that there was this question to be determined, and the evidence warrants the conclusion reached, the judgment and order appealed from should be affirmed, with costs. All concur.